(No. 4875.  April 6, 1928.)

O. A. NELSON and W. R. JONES, Respondents, v. W. M. JARDINE and W. E. JONES, Appellants.

[267 Pac. 447.]

A. H. Wilkie, James G. Gwinn and J. H. Peterson, for Appellants.

E. M. Holden, for Respondents.

WM. E. LEE, C. J.—On November 15, 1920, respondent
W. R. Jones and wife, as first parties, and appellant Jardine,
as second party, made and entered into a contract in writ-
ing whereby Jones and wife agreed to sell, and Jardine
agreed to buy certain real and personal property. The
following is an important provision of the contract:

"It is understood and agreed that there is now of record
against the above described property, a mortgage of $6000.00
in favor of the Northwestern Pacific Hypotheekbank, which
mortgage the first parties hereby agree to take care of when
the same may become due or at such earlier date as the
second party may elect to pay in unto the first parties an
amount which will bring the total payments up to one-
half the purchase price. When one-half the purchase price
has been paid, the second party may, by request, receive
a deed to the above described property together with the
abstracts showing the title to be vested in the first parties
in fee simple. . . . . "

It was further provided that Jardine would make, execute
and deliver to Jones a first mortgage on the property to
secure the payment of the balance due after the payment
of the Hypotheekbank mortgage.

Nine thousand one hundred dollars was paid on the execu-
tion of the contract. The remainder of the purchase price,
evidenced by promissory notes, was to be paid in instalments
in the future. Certain of the notes were assigned by W. R.

Jones to his son, W. E. Jones, who is said to have had some interest in the property, and thereafter assigned to respondent Nelson. Jardine took possession of the property, leased it and received the rents and profits; he paid the principal and interest of all notes that matured until January, 1923, when he withheld the payment of certain interest because of dissatisfaction concerning the water rights. During that month, W. R. Jones and "W. M. Jardine, by A. Laker Cook, his agent," signed what they termed two supplemental agreements. One of them, Defendants' Exhibit 11, provided that, in consideration of the payment of the interest which was then being withheld and a waiver by Jardine "for the time being" of an adjustment of water rights, Jones was to allow a discount of twenty per cent on all notes held by him and thereafter paid by Jardine. The other "supplemental agreement," Plaintiffs' Exhibit "P," provided that—

"The second party hereby agrees to assume and pay the said mortgage of Six Thousand Dollars on or before the due date as a part of the consideration under this contract, in lieu of said Six Thousand Dollar payment due March 1, 1928, and in consideration therefor said first party hereby agrees to deed the premises described in the said contract November 15th, 1920, to the said second party, subject to the said Six Thousand Dollar Mortgage, and accept a second mortgage for the balance due on his equity, to-wit: Nine Thousand Dollars, any amount of said equity over and above the Nine Thousand Dollars to be at that time paid in cash, said mortgage to be payable on or before five years from the date of execution, with interest at the rate of eight percent, or the first party will allow the second party to place first mortgage for any amount, and will allow a discount of twenty percent of any amounts paid on his equity, the second party to give the first party second mortgage, which he agrees to accept for any balance still remaining due on his equity, payable five years from date of execution, with interest at the rate of eight percent,

providing said payment be made within six months from the date hereof.

"This contract shall not be binding on the said second party until personally accepted by him. . . . .

"This is to certify that I have read the above supplemental agreement, and the same is acceptable to me.

"——————.''

On November 13, 1923, Nelson commenced an action against Jardine and the Joneses, "for the purpose of having the court declare and adjudge that he was vested with an interest in the land sale contract to the extent of the Jardine notes held by him," alleging that the notes and written contract were a part and portion of the same transaction. In his answer, Jardine admitted Nelson's interest in the contract. By cross-complaint against Nelson and the Joneses, Jardine alleged the contract and a willingness on his part to perform, the existence of the mortgage in favor of the Hypotheekbank, that he had paid more than one-half the purchase price of the land, and, under the terms of the contract, was entitled to have the mortgage paid and a deed to the premises delivered to him; that he had, on November 26, 1923, demanded that W. R. Jones pay the Hypotheekbank mortgage and make and deliver a deed to the land. Jardine also alleged that Nelson intended, and the Joneses might attempt, to transfer the notes held by them to innocent holders in due course and force him to pay the notes without regard to the land contract, and thereby escape payment of the Hypotheekbank mortgage. He prayed that an injunction issue restraining Nelson and the Joneses from transferring the notes to innocent holders and that "it may be adjudged and decreed that" Nelson "is the assignee of W. R. Jones, under said contract, and has an interest therein in proportion to the amount of notes that he may hold." An injunction issued restraining Nelson and the Joneses from "indorsing, assigning or in any way transferring any of those certain promissory notes . . . . except to persons who could not become a holder in due course."

W. R. Jones having failed to comply with the demand to pay the Hypotheekbank mortgage and make and deliver a deed to the land, Jardine served a second demand, stating that on failure "to comply with the said demands within fifteen days after receipt of this notice, that said contract will thereupon and thereafter, without further notice, be considered by me as entirely rescinded." The demands were not complied with and, on March 11, 1924, Jardine tendered Jones the possession of the premises and notified him that he, Jardine, had rescinded the contract. On March 22, 1924, Jardine filed a supplemental cross-complaint in which was alleged the payment by him of more than one-half the purchase price of the property, the failure to comply with his demands for the payment of the Hypotheekbank mortgage and the delivery of a deed to the land, his offer of a mortgage on the land to secure the unpaid purchase money, a tender of the possession of the land, the rescission of the contract, and a willingness to do equity. On September 2, 1924, Nelson filed a supplemental complaint, asking judgment on two of the notes held by him that had matured in January and March of 1924, and had not been paid. On the same date, Nelson and W. R. Jones answered Jardine's cross-complaint, in substance denying the allegations thereof, and, by way of separate answer and defense, alleged that, after the failure of W. R. Jones to pay the Hypotheekbank mortgage, appellant Jardine continued to make all payments under the contract and had alleged in his cross-complaint that he was willing and able to perform the balance of the contract; that by reason thereof an injunction had issued restraining respondents Nelson and W. R. Jones from selling and transferring the notes held by them, that by reason of the injunction Jardine waived his right to rescind the contract and is estopped from recovering any payments made by him; that Jardine failed to pay a note coming due on January 2, 1924, and was, at the time of the attempted rescission, in default in the performance of the contract; then alleged the existence of exhibit "P" whereby it was

claimed that Jardine had agreed to assume the Hypotheek-bank mortgage; that, by having accepted and retained discounts made under exhibit "P," Jardine was estopped from rescinding the contract. All the foregoing pleadings and a later complaint by Nelson to recover on two of the notes that matured in 1925 were denied.

The cause was tried to the court without a jury. It found that " . . . . by reason of the declarations, allegations and statements set forth . . . . in the Answer and said Cross-Complaint of defendant W. M. Jardine, and the obtaining of said temporary Injunction herein, relying and depending upon the fact that said Land Sale Contract was still in full force and effect, and basing his alleged right to said temporary injunction upon the fact that said Contract was still in full force and effect, . . . . the said Jardine obtained said temporary injunction, notwithstanding the fact that said W. R. Jones had not paid said $6,000.00 mortgage, . . . . and that defendant W. M. Jardine thereby, . . . . waived his alleged right to rescind said contract, or to recover any payments made on or under the same, and that the said Jardine was, and is, thereby and by reason thereof, estopped from rescinding said contract and estopped from recovering any payments made under the said Land Sale Contract"; that, by his acts and conduct, Jardine had ratified the so-called supplemental agreement of January 9, 1923, exhibit "P," and had thereby assumed and agreed to pay the Hypotheekbank mortgage; and that respondent Nelson was not an innocent purchaser but was entitled to judgment on the notes that had matured since the commencement of the action. Jardine has appealed.

A material finding was:

"That defendant W. M. Jardine held the said A. Laker Cook out to the plaintiffs and others as his Agent, and that the said Jardine has accepted and still holds and retains all of the benefits obtained for him by the said A. Laker Cook, as aforesaid, with full knowledge of the facts and circumstances under which the benefits and advantages were

obtained and said Supplemental Contract made, and that defendant W. M. Jardine, by his conduct, has ratified the acts of the said A. Laker Cook and the making and delivery of the said Supplemental Agreement, and that defendant W. M. Jardine is bound by the terms and conditions of the said Supplemental Agreement.''

Jardine earnestly urges that there is no substantial evidence to sustain this finding. He insists that the discounts were made either because they were paid before they were due or under exhibit 11 whereby Jones, in consideration of the payment of the interest being withheld and the waiver of a settlement at that time of the dispute about water rights, was to give a discount of twenty per cent on all his notes. Respondents insist that Jardine acquiesced in and accepted the benefits of exhibit ''P,'' and agreed to pay the Hypotheekbank mortgage. Ratification of the acts of an agent, it may be observed, is always a matter of the intent of the principal, or may be implied from his conduct. (2 C. J. 492, sec. 112.) It is significant that exhibits 11 and ''P'' were prepared and signed by W. R. Jones and Cook at the same time. Since, in each exhibit, it was specially provided that it should not be binding on Jardine until personally accepted by him, with a place provided for his signature, it is evident that the exhibits were in the nature of options. Because of the fact that the interest payment due January 2, 1923, was paid by Cook immediately on the signing of the two exhibits by Jones and Cook and without Jardine's knowledge (in so far as the record discloses) it is evident the payment was made under exhibit 11, for it recited that ''in consideration of the payment by said second party to the said first party, at this time, of the interest being withheld. . . . . ''

The evidence shows that, except the payment of January, 1923, the discounts given Jardine for premature payment of the notes were the result of overtures on the part of Jones and were not predicated on either of the so-called ''supplemental agreements.'' In fact, an interest payment

of March, 1923, as disclosed by the receipt, was made in full. While some of the expressions contained in letters from Jardine to Cook, standing alone, might be so construed as to imply that Jardine intended to pay the Hypotheekbank mortgage, all the evidence and the facts and circumstances disclosed by the record show that Jardine never intended to assume the payment of the Hypotheekbank mortgage unless and until he was able to sell his house or secure a loan on the land with which to satisfy the mortgage and certain of the outstanding notes. He failed both in his efforts to sell his house and to secure a loan. We have been unable to discover conduct on his part to indicate a ratification of exhibit ''P,'' and it was evidently not so understood by W. R. Jones, who, on July 21, 1923, wrote Cook:

''As the time has about expired for Mr. Jardine to take advantage of the 25%. discount on all notes, which I made to him last spring, thought I would write you, and if he still wishes to consider this offer, I will extend the time for him another three months.

''At the same time, wish you would find out if he cares to consider a 35% discount on three more of the notes. I can place these notes here in Utah, but felt that it would be only fair to give him first chance on them, and if he can do this, will you kindly let me know within the next ten days, as I must have a definite answer by that time?''

And ten days thereafter he again wrote Cook:

''Your letter 28th instant is received, and note that you think Mr. Jardine will be agreeable to taking up the three notes at the discount offered in my former letter, but that he may need a few days additional time in order to make full payment. As the ten days has about expired, if you can arrange to have this money here within the next week, it will be alright.

''Also note what you say with regard to the efforts Mr. Jardine is making toward taking advantage of the discount offered for payment in full, and there is no reason

why deed cannot be given at any time this arrangement is taken care of.

"I left a list of names of parties to whom you could refer for information with reference to the water right with my son, W. E. Jones. You might call him on the phone, as no doubt he has overlooked handing these to you.

"Your letter was very much appreciated, and I will be glad to hear from you when you have word from Mr. Jardine."

These letters show that Jones had no idea that Jardine had either expressly or impliedly assumed the payment of the Hypotheekbank mortgage under exhibit "P." If Jardine had so assented, why did Jones speak of "this offer" and why did he offer to extend "the time another three months"? If Jardine had bound himself to pay the mortgage, in consideration of a discount of twenty per cent, why did Jones months later make an offer of twenty-five per cent and thirty-five per cent discount to get the notes paid? Jones knew that Jardine was in no manner bound by exhibit "P," and, therefore, felt at liberty to discount Jardine's notes "here in Utah." The letters also show that Cook was considered by Jones as a mere "go-between," as Jones wrote Cook: "I will be glad to hear from you when you have word from Mr. Jardine." In none of the evidence does it appear that Jones ever thought that Jardine was bound by anything that Cook did or said. As a matter of fact there is no basis for holding that any discounts were made under exhibit "P." An analysis of that instrument discloses that it was only after Jones had delivered a deed and Jardine had made a first mortgage on the land that Jardine was entitled to any discounts on payments made to Jones. Jones neither made nor offered to make Jardine a deed to the land. Jardine never made a mortgage on the land, and he was, therefore, never entitled to any discounts under exhibit "P." Since Jardine did not assent to exhibit "P," either expressly or impliedly, and since W. R. Jones did not understand that Jardine

had agreed to assume the payment of the Hypotheekbank mortgage, the finding must be set aside as being without support in evidence.

It is contended that the court erred in holding that, by filing his cross-complaint, wherein he alleged the contract was in force and effect, and that he was willing, ready and able to comply with its terms, and by obtaining the injunction restraining the transfer of the notes, Jardine had waived his right to rescind and was estopped from rescinding or recovering back payments made under the contract. Jardine had agreed to pay $40,000 for the land. At the time Nelson commenced this litigation, Jardine had paid more than one-half of the purchase price, and his notes were outstanding for the balance. Because of their form, Jardine felt that he would be bound to pay the outstanding notes, if they got into the hands of innocent holders, and because of the attitude of Nelson, Jardine was, it seems to us, justified in inferring that Nelson, and probably the Joneses, would transfer the outstanding notes to innocent holders. Had this been done, Jardine might have been compelled to pay the entire purchase price of the land as well as the Hypotheekbank mortgage. At the time Jardine filed his first answer and cross-complaint, he had not rescinded the contract. His prayer for an injunction to prevent the transfer of the notes was not a breach of any of its terms. The notice he had given W. R. Jones to pay the Hypotheekbank mortgage did not constitute rescission. The contract gave him the right to demand the payment of the mortgage when he had paid one-half the purchase price. When Jardine filed his first answer and cross-complaint, he had no right to rescind; that remedy was not then open to him. At that time there had been no breach of the contract by Jones to warrant a rescission; Jones had not then refused to pay the Hypotheekbank mortgage; and sufficient time had hardly elapsed since the demand to constitute a breach of the contract and thereby afford Jardine a right to rescind.

In his demand of November 26, 1923, Jardine had not declared a rescission, but rather had demanded that W. R. Jones pay the Hypotheekbank mortgage and give him a deed, and he notified Nelson and the Joneses that he would not pay anything further on the purchase price of the land until his demand had been complied with. Conceding, without deciding, that there would have been an election of remedies, if the right to rescind had then existed, since Jardine did not then have a right to rescind, there was no election, there was no waiver of a then available remedy.

"The doctrine of election of remedies applies only where there are two or more remedies, all of which exist at the time of election and which are alternative and inconsistent with each other, and not cumulative, so that after the proper choice of one, the other or others are no longer available. This is upon the theory that, of several inconsistent remedies, the pursuit of one necessarily involves or implies the negation of the others. Whether coexistent remedies are inconsistent is to be determined by a consideration of the relation of the parties with reference to the right sought to be enforced as asserted by the pleadings." (9 R. C. L. 958.)

See, also, *Gridley v. Ross,* 37 Ida. 693, 217 Pac. 989.

Respondents urge, however, that appellant is estopped from rescinding. We are unable to agree with this contention. The prayer of the original answer and cross-complaint asked that Nelson and the Joneses be restrained from transferring the notes to innocent holders in due course, or that the notes be marked non-negotiable; and that it be adjudged and decreed that Nelson is the assignee of W. R. Jones and "has an interest therein in proportion to the amount of notes that he may hold." The supplemental cross-complaint asks, in addition to this relief, that the notes be delivered into court and canceled and the contract annulled. The same circumstances existed after as before the supplemental cross-complaint was filed, that is, there was the same possibility of a transfer of the notes

to persons who, as innocent purchasers, could recover on the notes without regard to the contract, and we see no reason why the injunction should not have remained in force until the right of rescission was determined. In view of the rights of the parties under the contract, on the issues raised by the original answer and cross-complaint, Jardine was entitled to the injunction to prevent the contemplated injury of having to pay the outstanding notes, representing the purchase price of the land, as well as the Hypotheekbank mortgage, which it was the duty of W. R. Jones to pay. On the issue of rescission, raised by the supplemental cross-complaint, Jardine was entitled to the injunction, to prevent the transfer of the notes to innocent holders, so that, if rescission were allowed, the notes might be delivered up and canceled. We are unable to recognize any element of estoppel in the respect suggested. In view of the rights of the parties, under the contract, the injunction was proper to prevent the contemplated injury to Jardine. At the same time there is no reason apparent to us why Jardine was not entitled to the same injunction in his action to rescind.

■ Respondents urge that Jardine, by failing to pay the note which matured January 2, 1924, was in default at the time he gave notice of rescission, and therefore could not rescind. There is no merit in this contention. Having paid more than one-half of the purchase price and having demanded the payment of the Hypotheekbank mortgage and the delivery to him of a deed, Jardine had done all that was then required of him. The payment of the mortgage and the delivery of a deed were conditions necessary to be performed before Jardine could be required to make further payments. He was not in default when he demanded the payment of the mortgage and the delivery of the deed, and the fact that one of the payments matured after his demand was made did not deprive him of the right to rescind the contract.

■ W. R. Jones' failure to pay the mortgage and deliver Jardine a deed and to accept Jardine's proffered

mortgage on the land, as security for the unpaid instalment notes, undoubtedly constituted a breach of a material provision of the contract, and gave Jardine the right to rescind the contract. (39 Cyc. 1416; 27 R. C. L. 648; *Stewart Land Co. v. Terrell* (Tex. Civ. App.), 266 S. W. 604; *Chatalian v. Di Fusco*, 244 Mass. 513, 139 N. E. 174; *Hudson v. Tilly*, 154 La. 839, 98 So. 265; *Cooper v. Tyler*, 46 Ill. 462, 95 Am. Dec. 442. See, also, *Richards v. Jarvis*, 41 Ida. 237, 238 Pac. 887.)

The record in this case is voluminous. The findings, conclusions and judgment cover 136 pages. A discussion of each of the errors assigned by appellant to reverse the judgment and the many contentions and reasons urged by respondents for affirming it would unduly lengthen the opinion. We have, however, carefully considered all the points made by both sides, and have reached the conclusion that respondent Nelson is not entitled to a judgment on the notes and that appellant Jardine is entitled to a rescission of the contract. The judgment is reversed in its entirety and the cause is remanded with instructions to proceed in accordance with this opinion. Costs to appellant.

Budge, Givens, Taylor and T. Bailey Lee, JJ., concur.

Petition for rehearing denied.