# EARL McKAY v. LLOYD McKAY AND OTHERS.[1]

December 23, 1932.

No. 29,179.

[1]Reported in 246 N. W. 12.

522

*Louis R. Frankel,* for appellant.

*Charles H. Winter,* for respondent.

OLSEN, J.

Defendant Lloyd McKay appeals from an order denying his motion for a new trial. He is the single appellant and is hereinafter referred to as defendant.

The suit is brought to set aside an award and decision of the arbitrators.

Plaintiff and defendant were copartners in the garage, trucking, and hauling business in Farmington in this state. They also owned as tenants in common the garage property, real estate and building, and a residence property occupied by defendant and his family. Differences arose between them as to their personal accounts with the partnership, certain joint household expenses paid by the partnership, and the amount contributed to the partnership by each of them. In November, 1931, they entered into an agreement in writing to submit their differences to arbitration. The agreement recites that the plaintiff and defendant have carried on the business above mentioned under the partnership name of McKay Bros., that the accounts between them have become involved, and that differences have arisen between them relating to said partnership. It then provides:

"Whereas, said parties for the purpose of economy and to save the possibility of any actions at law or in equity and the resulting expense and waste of time, have determined to submit the matters aforesaid to arbitration,

"Witnesseth that it is hereby agreed by and between said parties that said accounts and all other matters of difference between them shall be referred to the arbitration of a board of three, viz., C. I. Wells, Earl C. Wilmot, and Al. Miller, all of Farmington, Minnesota, which board shall proceed to hear and determine the matters in difference aforesaid, and that the awards or decisions made by

said board upon said determination shall be final and conclusive upon said parties hereto respectively and their respective heirs, executors, administrators and assigns, provided said board proceed to hear and determine said differences within a reasonable time and make said award or awards in writing signed by the members of said board or a majority of said members.

\* \* \* \* \* \*

"The said arbitrators shall have power to award and direct that the said parties or either of them shall execute and do such releases, assurances, and things as the said arbitrators shall think fit, and such releases, assurances and things shall be executed and done accordingly; and said board shall have full power to award and direct what shall be done by the said parties or either of them in relation to the matters in difference."

In the arbitration agreement there is no mention of dissolution of the partnership, any sale of property or leasing of real property, or any agreement as to competition in business.

The arbitrators heard the evidence presented by the parties and made their decision and award. The arbitrators among other things found and determined:

"We \* \* \* award, order and adjudge that the said partnership shall be deemed and taken to have ended and been determined on and from the first day of December, 1931, and that all moneys now on hand and received by said partners on or since that day shall be applied upon the then outstanding partnership debts.

\* \* \* \* \* \*

"In the manner and at the times hereinafter described the interest of one of said parties in and to all of said partnership property shall be purchased by and sold to the other of said partners, and, if on or before Tuesday, the 8th day of December, 1931, it shall not have been determined by said parties which of them shall purchase at the price hereinafter named as the price to be paid by one or the other, respectively, then and in that event said Earl McKay may become the purchaser as aforesaid by paying over to said Lloyd McKay, on or before Saturday, the 12th day of December, 1931, the

sum of $2,029.79, which sum we award and adjudge to be the amount to be paid by said Earl McKay as purchaser in the event he purchase said property; and, if said Earl McKay has not become the purchaser on or before the 12th day of December, 1931, then and in that event said Lloyd McKay may become the purchaser by paying over to said Earl McKay, on or before Thursday, the 17th day of December, 1931, the sum of $1,272.85, which sum we award and adjudge to be the amount to be paid by said Lloyd McKay as purchaser, in the event he purchase said property.

"Further, we do award, order and direct that said purchaser, his executors or administrators, shall bear, pay, and discharge all debts, demands, claims and damages whatsoever, due or owing by the said partnership, and shall keep harmless the other from all such debts, demands, claims and damages; excepting from such debts, however, liens upon any real property owned by said partners in common or otherwise.

*   *   *   *   *   *

"We award, order and direct that said purchaser shall receive and the other shall forthwith, upon payment made of the purchase price hereinbefore stated, execute and deliver to the purchaser a proper and effectual bill of sale transferring and setting over to said purchaser all of the motor vehicles, trucks, tractors, trailers, graders, plows, gas tanks and pumps, tools, corporate stock, and all the goods, chattels, merchandise, bills, notes, book accounts, claims, demands, choses in action, judgments, evidences of debt, and personal property of every name and nature whatsoever belonging to or used by the said parties in partnership, and held by them, or either of them or any other person for them or either of them; and said bill of sale shall contain the promise by the maker thereof that he will not compete in like business with the purchaser of said property for a period of five years from and after January 1st, 1932; and we order and direct that upon payment made of the purchase price as aforesaid the other shall execute and deliver to the purchaser a good and effectual lease in writing letting the property heretofore used by said partnership in the village of Farmington,

Minnesota, as a garage and headquarters and the property now used as a residence by said Lloyd McKay unto the purchaser aforesaid for one year from January first, 1932, with privilege of extending the said terms from year to year for a period of five years from said January first, 1932, at the option of said purchaser, and at the monthly rents of one-half of $35.00 for said business property and one-half of $25.00 for said residence property."

The trial court among other things found:

"That said arbitrators were without authority to impose an obligation upon the seller to covenant and agree to refrain from competing in a like business for a period of five years; that said arbitrators were without authority to award and effect a dissolution between said partners.

"The court further finds that the only matters in difference between plaintiff and defendant, Lloyd McKay, at the time the agreement and subsequent agreement of December 4th, 1931, were signed, were the personal accounts of partners with the partnership; the joint household expenses, including living expenses of the wife of defendant, which said partnership paid, and the amount contributed to the partnership at the time they engaged in business at Farmington."

The court ordered judgment in favor of the plaintiff, setting aside the award and decision of the arbitrators.

If the evidence sustains the finding that the referees were without authority to impose the obligation on the seller to agree not to compete in business with the buyer and without authority to award and effect a dissolution of the partnership, then the decision setting aside the award and decision of the referees necessarily follows. We hold this finding sustained by the evidence.

The trouble with the arbitration agreement and the proceeding is that it nowhere appears with any certainty what questions, if any, were to be or were submitted to arbitration outside of the matter of the account between the parties relating to the partnership.

The general rule is that the subject matter of a controversy should

be so specifically set out as to leave no reasonable doubt as to what has been submitted. 5 C. J. p. 35, § 48. The evidence and proceedings before the referees are not in the record, and the parties do not agree as to what was submitted to arbitration outside of the matter of the account. It cannot be said that the matters of leasing real estate, which was not partnership property, covenanting not to compete in business, and dissolving the partnership were questions of accounting or within any agreement as to what was submitted. The evidence is not such as to require the court to find that any of these matters were voluntarily submitted.

Errors are assigned on other findings of fact by the court. We do not deem it necessary to consider these assignments. The findings we have set out sustain and require the trial court's conclusions of law, and if other findings of fact not herein referred to were not sufficiently sustained by the evidence, which we do not decide, they would not change the result.

The matter of the leases, the covenant not to engage in a competing business, and the dissolution of the partnership and sale of the property are so closely linked with the accounting that the court could not well sustain the award in part and set it aside in part.

Order affirmed.