# CHARLES CIELUCH v. ECONOMY TIRE & BATTERY COMPANY AND ANOTHER.[1]

January 19, 1940.

No. 32,186.

[1]Reported in 290 N. W. 302.

*Abbott, MacPherran, Dancer, Gilbert, Doan & Zuger,* for relator.
*Hunt, Palmer & Hood,* for respondents.

PETERSON, JUSTICE.

*Certiorari* to review an order of the industrial commission denying compensation to employe-relator.

Relator, a young man 23 years old and in good health at the time of the injury, was employed as a warehouseman and serviceman by the employer. On the 21st day of December, 1936, he was engaged in repairing a bus tire. In placing it in position on a spreader so that it would come apart, he had to push down on a foot lever and at the same time lift up on the tire with his hands. While pushing with his foot and lifting with his hands, he gave a sudden jerk and his neck snapped onto his left shoulder, where it stayed for some five or ten minutes, causing immediate pain in the back of the neck. Upon getting his neck straightened again, the pain practically disappeared, and relator continued to work the balance of the day. The injury was reported to his employer on December 26.

On the evening of December 23 he had pain in the region of his left eye, behind the eyeball. This condition became worse with increased loss of sight and enlargement of the pupil. He consulted numerous doctors, who had him under observation and treatment. A Dr. Athens operated to relieve the eye condition. By February 1, 1937, vision in the left eye was reduced to industrial blindness.

Relator's claim was that, and the issue was whether, his loss of vision resulted from a subdural hemorrhage caused by the accidental injury. The hypothesis was that the alleged subdural hemorrhage was caused by trauma or strain while relator was manipulating the tire.

The parties resorted to medical testimony to maintain their respective views as to the nature of the injury and the causal connection. Some facts are practically undisputed. A subdural hemorrhage occurs intracranially in front of the optic chiasm, where the optic nerve passes out of the skull to the eye. The effect of such a hemorrhage is to compress the optic nerve so as ultimately to cause atrophy and blindness. The existence of such a hemorrhage could not be ascertained by view as in the case of a post-mortem examination and could be determined only by clinical evidence, which involved a consideration and evaluation of many facts disclosed by the evidence. The physicians were in accord that subdural hemorrhage is accompanied by immediate cerebral symptoms, consisting of severe headache, dizziness, nausea, vomiting, and others usually present in hemorrhage, of disabling severity.

Examination shortly after the injury disclosed infection in the tonsils and a pus condition in the prostate. In addition to the medical testimony as to relator's condition, there was some evidence that his loss of vision was probably caused by subdural hemorrhage.

Each side produced two physicians of admitted learning, skill, and standing, who gave well reasoned opinions based on the evidence in support of the side calling them. Relator called Doctors Robinson and Gillespie, respondents Doctors Burch and Hannah. Brain tumor, infection, subdural hemorrhage, and disseminated sclerosis were considered as causes. Only Dr. Burch considered all four. The others considered the first three mentioned. All of them definitely ruled out tumor and tonsil and prostate infection as cause.

The doctors for the respective parties disagreed as to whether cerebral symptoms were immediately manifest in a medical sense. This difference in views accounts in large measure, but not altogether, for the divergent conclusions reached by different physicians.

Relator gave a statement before the trial that the cerebral symptoms appeared practically right away. At the trial he testi-

fied that they did not appear until two days later. Both Doctors Robinson and Gillespie for the employe gave opinions, based on his statement and testimony, that relator's loss of vision was caused by subdural hemorrhage sustained by the accidental injury. They stated in effect that while they attached great weight to the immediate appearance of such symptoms there is no defined time for their appearance and that their manifestation in two days was immediate.

Dr. Burch gave an opinion before the trial to the insurer based on the employe's statement that there was a subdural hemorrhage sustained as a result of the accidental injury and that it caused the loss of vision. At the trial he testified that the opinion was based on the immediate appearance of the symptoms at the time of the injury; that the appearance of such symptoms two days afterwards was not immediate and could not be considered as evidence of such a hemorrhage. He stated that if relator had sustained a subdural hemorrhage it would have disabled him from working the rest of the day. He gave an opinion that there was no subdural hemorrhage, but did not state the cause of the eye condition, except to suggest that it might have been caused by disseminated sclerosis, for which he found definite factual basis in the evidence showing the employe's age, physical condition, and "a central scotoma," which was revealed when the employe's eye was examined shortly after the onslaught of the eye trouble.

Dr. Hannah adopted substantially the same view as Dr. Burch in excluding subdural hemorrhage both as a fact and as a cause of the employe's loss of vision. He said the symptoms of subdural hemorrhage would have been manifest within a couple of hours. He, however, found a cause. Although there was no evidence of protein infection and the fact of such infection could be ascertained only by extensive bacteriological investigation, absent here, he gave it as his opinion that protein infection was the cause of the trouble.

There were separate findings that on December 21, 1938, the employe sustained an accidental injury arising out of and in the

course of his employment, that the employer and insurer had timely notice and knowledge thereof, "that disability as the result of said accident did not extend beyond the waiting period," that thereafter the employe suffered from an infectious condition as a result of which he sustained the loss of vision of the left eye and two weeks' disability, and that the said infectious condition was neither caused nor aggravated by accidental injury arising out of and in the course of the employment.

Relator contends that the commission did not consider all the evidence in the case, that its finding that the loss of vision was caused by infection was based upon incompetent evidence, that the finding is without support by competent evidence, and that the only competent evidence compels a finding of subdural hemorrhage. Respondents controvert these contentions and urge further that, although there was no express finding that loss of vision was not caused by subdural hemorrhage, such a finding is to be implied from the third finding mentioned.

1. The claim that the commission did not consider all the evidence is based on recitals in the findings of the referee that hearings were had on specified dates and his failure to mention a hearing on October 18, 1937, when important evidence on behalf of the employe was received. The commission's order recites that it duly considered the transcript of the testimony, which included the evidence taken on October 18, 1937, all records, files, and proceedings in the matter. The recital makes it affirmatively appear that the evidence claimed to have been omitted was considered.

2. We shall assume without laboring the point that the finding that the loss of vision was caused by infection cannot be sustained, since all the physicians who gave opinions definitely ruled out infection from any source in relator's body as a cause, and Dr. Hannah's opinion of protein infection, being without factual foundation in the evidence, is mere conjecture on which no finding could legally be made.

The separate finding that the accidental injury did not disable relator beyond the waiting period remains after eliminating the baseless finding of infection. The issues and evidence show that the remaining finding is based on competent evidence to the effect that there was no subdural hemorrhage as a result of the accidental injury. Doctors Burch and Hannah testified that the evidence did not permit a medical finding of subdural hemorrhage. Dr. Burch's opinion did not attempt to account for the loss of vision. Dr. Hannah accounted for it upon the untenable ground of infection as a separate proposition. Since the claimed disability was loss of vision resulting from subdural hemorrhage caused by the accidental injury, the finding of no disability based on evidence that a subdural hemorrhage was not caused by such injury establishes that the claim was without basis. That loss of vision was not caused by the accidental injury is implicit in the finding that there was no disability beyond the waiting period. The express finding of a fact finds by implication a fact not expressly found, the existence of which it necessarily determines. Aiken v. Timm, 147 Minn. 317, 180 N. W. 234; Gibbs v. Minneapolis F. D. Relief Assn. 125 Minn. 174, 145 N. W. 1075, Ann. Cas. 1915C, 749.

The finding that there was no disability beyond the waiting period alone supports the commission's decision. The finding of infection was not necessary and could be eliminated from the case without changing the result. A decision should stand where it is sustained by the facts well found even though there was error in other findings which if changed or set aside would not affect the result. McKay v. McKay, 187 Minn. 521, 246 N. W. 12; Wortman v. Siedow, 173 Minn. 145, 216 N. W. 782. Of course care should be taken to discriminate between independent findings which stand on their own factual basis and those which are mere conclusions and inferences from, and hence controlled by, other specific findings. See Pushor v. American Ry. Exp. Co. 149 Minn. 308, 183 N. W. 839.

The commission considered all the evidence. If the finding of infection as the cause of loss of vision were eliminated from the case, the separate finding of no disabling accidental injury in which there is clearly an implied finding that the loss of vision was not caused by subdural hemorrhage sustained as a result of the injury, would support the decision and compel affirmance.

Writ discharged and order affirmed.