[Civil No. 4656. Filed March 23, 1945.]

[157 Pac. (2d) 352.]

ANDRAE CRACCHIOLO and CARMELITA CRAC-
CHIOLO, his wife, Appellants, v. JOE CAR-
LUCCI and W. M. KILLEN, Appellees.

Messrs. Knapp, Boyle & Thompson, for Appellants.

Messrs. Misbaugh & Fickett, and Mr. William S. Dunipace, for Appellees.

LaPRADE, J.—The appellants, hereinafter called the owners, and the appellee, Joe Carlucci, hereinafter called the contractor, made a building contract on July 16, 1941, for construction of a tourist court or "motel" near Tucson. The appellee, W. M. Killen, was surety on the contractor's bond for faithful performance of the contract. The motel was to be completed in accordance with an architect's plans and specifications on or before November 15, 1941, for a price of $39,875.

In December 1941, the contractor turned the motel over to the owner, who opened the motel for business.

The contractor claimed that there was due him more than $14,000 on the contract and extras, which the owners refused to pay, claiming nonperformance of the contract in accordance with the plans and specifications, and damages for failure to complete the work on time. The dispute was submitted to arbitration by written agreement on March 11, 1942. The arbitrators made a written award on June 5, 1942, and a supplemental award on June 15, 1942. The arbitrators found, among other things, that the contractor had failed to comply with his contract in six particulars, and required that the contractor remedy these defects by July 31, 1942. The owners were required to pay the contractor all sums owing over $5,000, which they did.

The contractor, during June, July, and August, 1942, attempted to comply with the arbitration award, and by the end of August did substantially complete all work on five of the six defects, but failed to comply with Item 15 of the award, the largest and most costly part of the work to be done.

Item 15 of the award, which the contractor failed to fulfill, concerns the regrading and repaving of the motel driveway. This driveway, paved in form of a horseshoe, with thirty-two cabins around the outer edge, contains approximately 1800 square yards of paving. The original plans and specifications required that the driveway paving be not less than twelve inches below the floors of the motel cabins and have a drainage slope of at least twelve inches from the back of the property to the highway so as to afford proper drainage. When the contractor finished with his original work in December 1941, the floors of several cabins were almost flush with the driveway pavement, and the driveway had a drainage slope of only four inches from back of the property to the highway. The arbitrators' award required that this driveway be regraded and

repaved under competent engineering supervision, and "that in no case shall the finish paving grade at entrance to any cabin be less than six inches below finish floor of that cabin."

Shortly after the award was rendered, the contractor employed two of the arbitrators, who were qualified engineers and architects, to draw plans for regrading and repaving the motel driveway in accordance with Item 15 of the award. After several delays, due chiefly to the contractor's insistence that the plan for regrading and repaving should be as simple and as inexpensive as possible, "Plan F" was designed by the contractor's two engineers, and approved by the contractor shortly before September 9, 1942. The owners were asked to approve this plan, but took no action for about two weeks, and before they did approve the plan, the contractor told his engineers to "Forget it, we are going to court," and proceeded with his lien foreclosure action.

In the trial of the case, the two engineers and architects, who had been the arbitrators, testified that it would cost more than $8,000 to comply with "Plan F." The contractor testified the cost of compliance with "Plan F" would be not more than $2,500. A paving contractor, Mr. F. H. Martin, testified that compliance with "Plan F," with a drainage slope of between fifteen to eighteen inches, would cost $3,104.07. ("Plan F" specified a drainage slope of approximately thirty inches.) The court adopted the paving contractor's cost figure, and entered judgment for failure to comply with the award as interpreted in "Plan F," but with a drainage slope of fifteen to eighteen inches, at $3,104.07. There were also assessed damages for past, i.e., subsequent to July 31, 1942, and probable future loss of rentals estimated to accrue during the repaving process in the sum of $1,100. Subtracting the total of those two sums and two other incidentals, from the $5,000 retained by the owner under the arbitration

award, the court arrived at a balance due from the owners to the contractor of $744.93. This appeal is from the judgment of the court foreclosing the contractor's lien for this amount, after motions to amend findings and judgment and for new trial had been overruled.

Appellants' first three assignments of error challenge the conclusion of the court that by virtue of said arbitration agreement and award they were not entitled to any recovery for alleged damages in loss of rentals prior to July 31, 1942, and the rulings excluding proffered evidence to prove such losses.

 The submission agreement was general rather than special. In this regard it recited that whereas " . . . a dispute has arisen between the parties in connection with and arising out of their relation and the compensation to be paid the contractor, and the performance by the contractor of work thereon . . . the parties have agreed to submit all controversies and differences between them to arbitration, . . . "

The agreement contains no specification or enumeration as to the various items in dispute. A submission agreement is a contract and must comply with the formal requisites of all agreements. 3 Am. Jur., Arbitration and Award, Section 38. (Cases cited.) Among other things it must contain a definite and sufficient statement of the matter to be referred to arbitration. (Id.) Reference to arbitrators of "all matters in dispute" with reference to the subject-matter is sufficiently certain and comprehensive to support an award. *King* v. *Cook,* 1 T. U. P. Charlt., Ga., 286, 4 Am. Dec. 715; *Shackelford* v. *Purket,* 2 A. K. Marsh, Ky., 435, 12 Am. Dec. 422.

 Where the submission is general, parol evidence is admissible in order to remove uncertainty as to what matters are actually in dispute. *Davy's Ex'rs.* v. *Faw,* 7 Cranch 171, 3 L. Ed. 305; *Shackelford* v.

*Purket,* 2 A. K. Marsh, Ky., 435, 12 Am. Dec. 422. In the last case cited, the court said:

" . . . Without the aid of parol evidence, it would be impossible to sustain a general submission of all matters in dispute. For as the submission contains no suggestion of the matters disputed, it must be inoperative, unless those matters can be ascertained by matters extraneous from the submission; . . . "

It is not possible for us to tell from an examination of the submission agreement what matters were in dispute or what matters were submitted. Apparently the parties appeared before the arbitrators and submitted the matters in dispute. The arbitrators' award states that the award includes "such items of dispute as were submitted . . . by the owners or the contractor." Nevertheless, the transcript of evidence discloses that on the hearing in the Superior Court, one of the arbitrators admitted that one of the owners, prior to the date of the award, had called to the attention of the board the fact that he had lost rentals. Another arbitrator stated that he did not remember that this claim was on the original list submitted but that it might have been, but that in any event "we just figured, all of us, that it was outside our province."

Subsequent to the award, the owners called to the attention of the arbitrators, for their action, the fact that they had failed to consider and include in their arbitration award the matter of the damages for loss of business claimed by the owners arising from closing of portions of the motel due to the failure of the contractor to complete his contract.

The submission agreement, among other things, provided that the board "may make successive awards from time to time as in their opinion the nature and exigencies of the subject-matter may demand." Generally, final determination of the submitted questions exhausts the powers of the arbitrators. 3 Am.

Jur., Arbitration and Award, Sec. 93. An exception to this rule exists where by mistake the arbitrators have failed to consider a portion of the dispute submitted. *Frederick* v. *Margwarth,* 221 Pa. 418, 70 Atl. 797, 18 L. R. A. (N. S.) 1246; *Pritchard* v. *Daly,* 73 Ill. 523. An award must be final, complete, and coextensive with the terms of the submission, and in order to be final and conclusive it must embrace everything required by, and must cover every point included in, the submission. 3 Am. Jur., Arbitration and Award, Sec. 122, notes 1 and 2. The arbitrators, through mistake, failed to consider and decide a part of the dispute submitted to them, and the award was insufficient because incomplete. The agreement was still in force at the time of the award and at the time of the request for a further consideration of the matters not determined. The arbitrators had the authority to finish their work by making a full and complete award and should have done so, both under the general law and especially under the provisions of this agreement which provided for and authorized successive awards.

Appellants' Assignments of Error No. VI and No. VII charge error in the following finding of fact: "The Court further finds that on the general plan, as shown by Exhibit F, for the regrading and repaving of the premises herein involved, a grade from the front to the back of from fifteen to eighteen inches, is ample to provide adequate drainage for said premises," upon the ground that the contractor, after having employed competent engineers to draft the "Plan F" for compliance with the arbitrators' award, was bound to comply with "Plan F," and that the court should not have admitted any evidence that a lesser drainage slope than provided in "Plan F" was ample to provide adequate drainage for the premises. In this behalf it will be noticed that the award merely provided that the area should be regarded and paved to provide proper drainage, and that the finish paving grade at the en-

trance of each cabin should not be less than six inches below the finish floor of any cabin. This was the provision of the award that the contractor had to comply with. The so-called "Plan F" was not a part of the award. It was merely the contractor's interpretation (prepared by his agents) of what he thought would be sufficient to comply with the award. He was under no obligation to secure the consent or approval of the owners to "Plan F," nor did he need their consent to or approval of the plan. With reference to the effect of an award, we quote with approval the following statement from 3 Am. Jur., Arbitration and Award, Sec. 154:

"It has been authoritatively stated that the entire proceedings of arbitration and award merely constitute a contract between the parties. At the time of the submission they agree to do what shall be awarded; and when the award is made, it is read into the original agreement. . . . "

To enable the court to assess the owners' damages for the failure of the contractor to properly grade the premises, it was necessary for the court to hear and determine what grade would be sufficient to comply with the terms of the award. Such expert testimony was offered by each of the parties on this point. We conclude that there is ample testimony in the record to substantiate the finding complained of.

Appellants' Assignment of Error No. VIII challenges the validity of a finding of the court to the effect that the owners were indebted to the contractor in the sum of $744.93, after fixing the amount to be allowed the owners by way of setoff against the original contract price, upon the ground and for the reason that there was no competent evidence that the contractor had complied with or been excused from compliance with the award so as to become entitled in any manner to

any portion of the $5,000 retained by the owners under the award.

Appellants, by their Assignment of Error No. IX, complain that the court erred in entering its judgment foreclosing the contractor's lien for $744.93, charging that the evidence wholly fails to support the allegations of the contractor's complaint and his amended answer to counterclaim that the contractor had complied with his contract and the arbitration award. It is the theory of the appellants that, under the "clean hands" doctrine of equity jurisprudence, the contractor can neither recover upon his complaint for foreclosure of a lien nor can he be heard to make certain defenses to the owners' counterclaim for breach of contract and failure to comply with the arbitration award.

We shall proceed to dispose of these two assignments of error. Where a contract has been partly performed by one party and the other has derived a substantial benefit therefrom, the latter cannot refuse to comply with its terms simply because the former fails to complete performance. Where there has been part performance and there is a breach of a promise which goes to only a part of the consideration and the breach may be compensated for in damages, the breach does not relieve the other party from his obligation to perform his promise. These general principles of law are set forth in 12 Am. Jur., Contracts, Sec. 343. We believe them to be applicable to the facts here. From the time the owners took possession in December 1941 to the date of the trial in April 1943, they had been in possession of the thirty-two cabins and making full use of them, except for such loss of use as may have occurred prior to July 31, 1942, and not compensated for in the court's judgment. For all practical purposes, the motel structure had been complete, and the owners had had the substantial and beneficial use thereof. It

is true that the paved areaway around the buildings and the drainage grade were not what had been contracted for and promised, but, in view of the rules above stated, we think the contractor was within his right in suing for the contract price, subject to the right of the owners to deduct for all damages resulting from the failure to comply with the contract and award on the part of the contractor. The amount of these damages was the question before the court. The owners offered much testimony as to their estimation of the damages, including the testimony of the architects, MacMillan and Herreras. The contractor testified in his own behalf and offered the expert testimony of two engineers, Miller and Grove, and the paving contractor, Martin. From this conflicting testimony the court determined that the unperformed portions of the contract could be accomplished for $3,104.07. Under the repeated holdings of this court, the findings of a trial court are binding on the Supreme Court if the evidence is such that it reasonably sustains them. *Moeur* v. *Farm Builders Corporation*, 35 Ariz. 130, 274 Pac. 1043; *Molina v. Bennett*, 37 Ariz. 70, 289 Pac. 512.

In *Hazelett* v. *State of Arizona*, 55 Ariz. 273, 100 Pac. (2d) 992, this court held that a reversal of a judgment does not always require a new trial in all the issues involved in the case, saying: ''To so hold would often necessitate useless and expensive proceedings.'' Citing Sec. 3681, R. C. 1928, now Sec. 21–1832, Arizona Code Annotated 1939. This holding we believe to be applicable in the instant case. Had the trial court on the hearing of the motion for a new trial determined that it had erred in not allowing the owners to offer in evidence proof of alleged loss of rentals accruing prior to July 31, 1942, it would have been justified in limiting a new trial to the single issue of such alleged damages. This by authority of Section 21–1310, Arizona Code Annotated 1939. There was no issue on the

matter of nonperformance of the award. The sole issue was the amount of damages. The several items of damage were severable and each capable of determination. The appellants have had their day in court and had their damages fairly evaluated and fixed except as to those matters which were not considered by the arbitrators and which we determine the trial court should have heard and fixed. We see no occasion in reversing this case to direct the trial court to try and determine anew appellants' damages for the failure to regrade, repave, and the incidental damages attendant therewith. In view of the fact that on a retrial it might be determined that appellants' damages are in excess of the $5,000 retained by them, in which event the surety on the contractor's performance bond would be liable, the judgment of the trial court dismissing the owners' claim against the surety is ordered vacated so that his liability may abide the result of the new trial.

The case is reversed and remanded for further proceedings not inconsistent with this opinion.

STANFORD, C. J., and MORGAN, J., concur.