[Civ. No. 16759. First Dist., Div. Two. June 22, 1956.]

EDWARD L. MARTIN et al., Respondents, v. HARRY KARSH et al., Appellants.

HARRY KARSH et al., Appellants, v. BAYSHORE CONSTRUCTION COMPANY (a Partnership) et al., Respondents.

Theodore Golden, J. Bruce Fratis and Robert N. Stefan for Appellants.

Fitzgerald, Abbott & Beardsley for Respondents.

THE COURT.—This is an appeal in consolidated actions relating to the sufficiency of the performance of the contractors, Martin and Hastings, doing business as "Bayshore Construction Company" hereinafter referred to as "Bayshore," in constructing a concrete warehouse under a fixed fee contract for Harry Karsh, Hy Karsh and their wives, the owners of the property in Oakland on which the warehouse was built, hereinafter referred to as "Karsh." Bayshore instituted action 254691 to foreclose a mechanic's lien against Karsh for the balance allegedly due under the construction contract; Karsh instituted against Bayshore action 25472 for damages (in the amount of $30,000) because of alleged breach of said construction contract on the ground that Bayshore had not completed the warehouse in a workmanlike manner and in conformity with the plans and specifications. The court found in substance that Bayshore had duly performed its contract and was entitled to the agreed price for the principal work and certain extra work less the sum of $625 allowed by the court for cost and expense of repairing concrete work which the court found would ordinarily be done by the contractor after the completion of a job like this one. Accordingly the foreclosure of a lien for the balance so found due was ordered and Karsh were adjudged to take nothing by their action and to pay the costs of both actions. They appeal from the judgment in the consolidated actions, contending that the evidence does not support the findings.

We have concluded that said contention is without merit, that the conflicting evidence contains substantial support for the findings and judgment and that appellants' contrary argument is based on an incorrect stressing of their own evidence, rejected by the trial court, instead of the evidence favorable to respondents on which the trial court relied.

It is conceded by respondents that there were some deviations from a strict performance of the letter of the contract, plans and specifications, which deviations, however, they contend were made in good faith and justified by the circumstances, and some slight imperfections not more than normal for such buildings. It is accordingly their position that they substantially performed their contract, that the value of the building was in no way impaired and that appellants did not suffer any damage. The court's judgment and findings sustain those contentions except for the allowance of the stated deduction of $625 for repair of imperfections (cracks) of the concrete work, normally borne by the contractor.

■ The law is settled in this state, that in the case of building contracts, especially where the owner has taken possession of the building and is enjoying the fruits of the contractor's work, no literal compliance with the contract in all details and no absence of all defects and imperfections is required to entitle the contractor to recovery on the contract, but that he can have such recovery after substantial performance in good faith, if the deviations and imperfections do not substantially affect the usefulness of the building for the purposes for which it was intended, subject to an allowance for damages if the owner has suffered any by reason of the failure to perform strictly. ■ Whether, in any case, defects and omissions are substantial or unimportant is generally a question of fact. (*Thomas Haverty Co.* v. *Jones,* 185 Cal. 285 [197 P. 105] ; *Smith* v. *Mathews Const. Co.,* 179 Cal. 797, 801-802 [179 P. 209] ; *Connell* v. *Higgins,* 170 Cal. 541, 556-557 [150 P. 769].)

■ In this case the evidence shows that appellants were fully enjoying the intended advantages of the construction and that its usefulness for the intended purpose was not substantially impaired. The building had been leased pending construction on the plans and specifications filed for a term of 10 years at a rent of $1,700 a month, it had been occupied by the lessee in July, 1953, and since then until the trial in October, 1954, the lessee had paid the rent provided for without complaining or requiring remedying of any of the

defects and deviations stated by Karsh in this action and no repair or replacement of any of the work done by Bayshore had been made or requested. For their contention that the value of the building was impaired by the alleged deviations and defects appellants rely on the testimony of their expert appraisers (brokers), that the property without said deviations and defects would have been worth $170,000 whereas as constructed the value would be between $120,000 and $140,000. However, said evidence caused a conflict only with the evidence of Bayshore's expert witnesses that none of the matters complained of was poor workmanship or a structural defect or affected the value of the building, which latter evidence was corroborated by the fact that in November, 1953, Karsh procured from The Prudential Insurance Company a loan on the warehouse of $125,000 based on an appraisal of $187,000.

As the above in itself is a sufficient justification of the judgment little need be said about the specific complaints. Karsh mainly complains of two deviations:

1. The footing for the center columns were poured separately, whereas the plans provided for a monolithic pour, in one piece with the adjacent floor slab. The reason given for the deviation by Bayshore is that Karsh eliminated from the original plans the wire mesh reinforcement which was originally intended to integrate the column footings and the adjacent floor slabs and instead increased the thickness of the floor slab and that said revision caused the separate pouring to be advisable. Even appellants' foundation expert conceded that to reach by the monolithic pouring a good effect in distributing the load over the floor reinforcing material would probably be required. From the side of Bayshore there was much expert evidence that the separate pouring under the circumstances was better or at least not less good than the monolithic pouring which would have led to different, but worse or at least not less cracking of the concrete. Among those who so testified was Robinson, the structural engineer of the work to whose satisfaction the work according to the specifications had to be completed.

2. The purlins of the roof were not hung level with the arches between which they were fastened as provided by the plans but so that the tops of the purlins were 2 inches higher than the arches which prevented the nailing of the sheathing to the arches themselves over and above the nailing to the purlins. It is conceded by appellants that the plans requiring

level hanging and nailing also to the arches failed to provide for the fact that the laminated arches were tied together by stitch bolts, the heads of which extended above the top of the arches and that such created a problem in nailing the sheathing to the arches which had to be solved in some way. Appellants, however, contend that other solutions than providing room for the bolts by raising the whole ceiling two inches would have been preferable, to wit, cutting out the sheathing where it came over the bolt head or countersinking the head bolts into the laminated arches. Again the evidence was conflicting, the experts of respondents among whom was the engineer Robinson, testifying that the method used was just as good as the methods preferred by appellants, that it was in accordance with good engineering practice and not a structural defect.

 Appellants rely on that part of the provision of section 34 of the specifications which reads: "No deviations shall be made from the plans or the specifications." This provision should be construed together with provisions which require the work to be done in a substantial and workmanlike manner to the satisfaction of the engineer of which we cite the following ones. Part of section 31 reads: ". . . The Contractor and Owner admits and agrees that the plans and specifications exhibit the intent and purpose of the Owner in regard to the work, and that they are not necessarily complete in every detail and are to be considered as showing the purpose and intent only; . . ."

Section 22 reads: "The Contractor shall comply with the obvious intent and meaning of these plans and specifications, which shall be construed to include all material, measures and modes of work necessary to complete the work herein specified in a workmanlike manner, in strict accordance with these plans and specifications, and to the satisfaction of the Engineer. Should any question arise as to the intent and interpretation of these plans and specifications he shall refer the same in writing to the Engineer, whose decision thereon shall be final." It then appears that the provision against deviation is not intended to make the plans and specifications inviolable under all circumstances but is part only of a system intended to obtain a good and workmanlike job in accordance with the general intent of the owner and under the control of the engineer. So construed it is not intended or effective to deviate from the legal rule of substantial performance.

 There can be no doubt that under the above evidence

the court's implied holding that the two deviations complained of did not prevent recovery by the contractor under said rule and did not entitle appellants to damages over and above the deduction granted for cracks to be repaired by the contractor is binding on this court.

The same applies to the miscellaneous imperfections of the concrete work complained of, photographs of which in evidence were shown to the engineer, Robinson, who testified of each that it was not a structural defect, not less than good workmanship and that the whole work was performed to his satisfaction, although he testified that some cracks in the concrete were such that the owner could expect the contractor to repair them, for which repairs the court granted the deduction of $625. There is no evidence showing that said amount is not sufficient for said purpose.

Judgment affirmed.