[Civ. No. 22505.   Second Dist., Div. One.   Feb. 3, 1958.]

DAVID SALOT et al., Appellants, v. MILTON J. WERSHOW, Respondent.

Harry C. Cogen and Aaron L. Lincoff for Appellants.

Gendel & Raskoff, Bernard Shapiro and Jerome H. Rhodes for Respondent.

FOURT, J.—This is an appeal from a judgment vacating, dissolving and setting aside a preliminary injunction, and holding that defendants could proceed with the pending private sale of certain lots included under a trust deed in accordance with the terms thereof, with directions to the trustee to apply the proceeds received from the sale to the payment of the costs, expenses and attorney's fees in the amount of $1,500 allowed in this action; to the costs and expenses incident to the trustee's sale; and in satisfaction of the unpaid balance of principal and interest due, owing and payable under the terms of a note for which the trust deed was security.

Beverly Country Estates, a copartnership consisting of plaintiffs David Salot and his wife Betty M. Salot, defendant Harry M. Wershow and others, was the owner of certain real property in Los Angeles County commonly described as Lots 1 to 28 inclusive, 30, 32, 33, 34, 35, 36, 37, 38, 39, 40, 55, 56, 57, 58, 59, 61, 62, 65 and 66 of Tract 17419. These 47 lots and additional real property were subject to a Deed of Trust owing to Claude L. Cameron and Emma O. Cameron. This note and trust deed will hereinafter be referred to as the Cameron note and trust deed. It contained the following provision: "Trustors may release more than seven (7) lots per month by the payment of an additional $4,000.00 on principal for each lot, plus the accrued interest due to the date of each such lot release."

On March 31, 1954, the partnership Beverly Country Estates sold and conveyed said 47 lots in Tract 17419 to plaintiffs, and

plaintiffs executed and delivered to said seller their promissory note for $63,750. This note was due and payable May 1, 1955, and was secured by a Second Trust Deed which contained the following provision: "2. As long as the aforementioned Cameron Deed of Trust remains unsatisfied, release of any one or more lots from the Cameron Deed of Trust, in accordance with its terms, shall entitle the trustor hereunder to a release of the same lot or lots from this deed of trust. After the Cameron Deed of Trust is fully satisfied, lots may be released from this deed of trust upon payment to the beneficiary hereunder of the sum of $5,000.00 for each such lot sought to be released until full payment of the promissory note bearing even date herewith is given to secure." On March 31, 1954, approximately $92,000 remained to be paid on principal under the Cameron note and trust deed.

The note and deed of trust executed by plaintiffs to Beverly Country Estates was duly assigned and transferred to the defendant Milton J. Wershow on or about April 30, 1954, and will be referred to hereinafter as the Wershow note and trust deed.

Plaintiffs made arrangements for the release and reconveyance of five lots subject to the aforementioned encumbrances which were completed without incident and are not germane to the issues presented in this action. An effort was made in the trial court to establish a prior course of dealings between the parties and thereby to impose obligations upon the parties in addition to those set forth in the written instruments. However, the trial court made a finding of fact, which is supported by substantial evidence that "No custom, practice or agreement, oral or in writing, exists between plaintiffs and defendants contrary to the terms and provisions of or different than that contained in the Wershow Note and Wershow Trust Deed."

The present controversy developed as the result of a request by Salot addressed to Cameron and Wershow on April 27, 1955, for the release of 18 additional lots through an escrow opened by Salot at the Bank of America, Los Angeles Main Branch. The payment of $4,000 plus interest for the release of each of said eighteen lots from the lien of the Cameron trust deed would have operated by its terms as a full discharge of the obligation secured by the Cameron trust deed. Thirty-four lots then remained subject to the Wershow trust deed, and the release of the 18 lots as requested by Salot would have left only 16 of the original 47 lots subject to the Wershow trust deed. These said 16 lots would, however, be subject to

the encumbrance of the Wershow trust deed and to no other encumbrance.

In response to Salot's request addressed to Cameron, the American Trust Company in San Francisco on May 4, 1955, forwarded the necessary papers for the reconveyance under the Cameron trust deed to the Title Insurance and Trust Company in Los Angeles, with instructions to deliver them into the escrow opened by Salot.

The record is devoid of evidence of any efforts on the part of Wershow to comply with Salot's request in the days prior to maturity of the Wershow note on May 1, 1955. Thereafter, Wershow consistently demanded payment in full of the note as a condition to the delivery into escrow of the requested partial reconveyances. Wershow's contentions are clearly set forth by his attorney in a letter addressed to Salot under date of May 24, 1955, as follows: ''Mr. Wershow and Mrs. Wershow have already signed Requests for Reconveyance, which are being held pending working out of arrangements for the payment of the Note. We are informed that there is a substantial equity in each of the lots upon which you have requested Partial Reconveyance above and beyond the $4,000.00 per lot which would have to be paid to the holders of the Cameron Trust Deed for a release of each lot. For this reason a Reconveyance of those lots while there is a default on the Note would substantially and adversely affect the security of my client.''

The parties held a series of meetings in an effort to negotiate their differences. When it became apparent a settlement would not be possible, Wershow on September 12, 1955, executed a Notice of Default and Election to Sell. Thereafter, to enforce payment of the matured obligation then in default, the Title Insurance and Trust Company noticed for sale on January 10, 1956, all of the 34 lots which were still subject to the Wershow trust deed.

Plaintiffs then instituted this action to enjoin defendants from enforcing the terms of the trust deed, and from selling any of the lots subject to the Wershow trust deed. A preliminary injunction was issued at Salot's request, enjoining and restraining the sale of the 18 lots released from the lien of the Cameron trust deed by the payment of $4,000 plus interest per lot. Sixteen lots were unaffected by the preliminary injunction, and these 16 lots which were subject to the Wershow note and trust deed were sold on January 10, 1956, for a total sum of $47,025.

A defense was set forth in the answer filed in this action alleging Salot's breach of his obligations under the Wershow note and trust deed by anticipatory repudiation prior to May 1, 1955. So far as we have been able to determine there was no reference to Salot's refusal to perform theretofore made in any of the extensive correspondence between the parties. The trial court made a finding of fact that "In or about the middle of April, 1955, plaintiff David Salot gave notice to defendant Milton J. Wershow that plaintiffs would not and could not pay the Wershow Promissory Note according to its terms when said Promissory Note would fall due on May 1, 1955. At no time concerned in the within action, and in particular at no time prior to the due date of said Wershow Promissory Note, May 1, 1955, did plaintiffs, or either of them, retract their said notice that they would not and could not make payment on the note according to its terms." From this finding of fact, it was concluded that in or about the middle of April, 1955, "plaintiffs anticipatorily repudiated and breached their obligation to pay defendant Wershow according to the terms of the Wershow Promissory Note."

The trial court dissolved the preliminary injunction; concluded that plaintiffs were not entitled to a permanent injunction; and decreed that the pending private sale under the Wershow trust deed might proceed as to the 18 lots which had been subject to the temporary injunction.

The court ordered payment from the proceeds of the sale of the costs and expenses of the action, together with attorney's fees allowed in the amount of $1,500; and the court further ordered that after payment of the costs and expenses incident to the trustee's sale, the balance be applied in satisfaction of the principal remaining unpaid on the Wershow note, plus interest.

Subsequently, and pending the hearing of this appeal, to prevent the sale of said 18 lots, plaintiffs paid off the balance of principal owing on the Wershow note in the amount of $22,463.54, plus interest from January 10, 1956, plus costs in the amount of $75.10 and attorney's fees of $1,500.

In this appeal, plaintiffs contend that the judgment is erroneous and should be reversed on the following grounds:

1. Plaintiffs' demand for a release of certain lots on April 27, 1955, was timely and plaintiffs were entitled to the releases that they demanded.

2. The trust deed executed by the Salots was a purchase

money trust deed and under Code of Civil Procedure, section 580b, no deficiency is allowable.

3. The defendant Wershow, by his conduct, is estopped to claim that plaintiffs' demand for a release of the 18 lots was not proper or timely.

The trial court in ruling that Wershow was not obliged to execute the releases as requested by Salot on April 27, 1955, based its conclusion in part, at least, upon its finding of an anticipatory breach on the part of Salot.

Salot denied making any statement of refusal on his part to perform his obligations under the note and trust deed, and attempted to show his financial condition as evidence of his ability to perform. The court's finding apparently is based upon the testimony of Mr. Wershow. On direct examination, Wershow stated that during the course of a conversation in Mr. Salot's office on Wilshire Boulevard approximately April 10th, "Mr. Salot told me, as a matter of fact, he said that he could not pay the note when it was due and would not pay it." On cross-examination, Wershow stated, "Mr. Salot told me, he said to me, he could not pay the note and would not when it came due, and he was anxious to make some arrangement for an extension, and I told him I would be very happy to grant the extension as long as my equity would not be decreased, and we discussed the pros and cons at that time with the possibility of my taking certain lots in lieu of payment of the trust deed. . . . He said he was working out some plan that he felt would mature May 1st, and he could work out the proposition in full."

It is our opinion that the trial court erred in finding a breach by anticipatory repudiation on the part of Salot. The statements made by him fail to meet the requirement that the refusal to perform must be unequivocal and absolute, which requirement is well stated in *Atkinson* v. *District Bond Co.*, 5 Cal.App.2d 738, 743 [43 P.2d 867], to be as follows: "A mere declaration, however, of a party of an intention not to be bound will not of itself amount to a breach, so as to create an effectual renunciation of the contract; for one party cannot by any act or declaration destroy the binding force and efficacy of the contract. To justify the adverse party in treating the renunciation as a breach, the refusal to perform must be of the whole contract . . . and must be distinct, unequivocal and absolute."

Among other requirements for application of the doctrine of breach by anticipatory repudiation are that the repu-

diatee treat the repudiation as a breach, and that there have been no retraction of the repudiation by the repudiator prior to the time for performance or prior to a detrimental change in position on the part of the repudiatee in reliance thereon. (See *Rauer's Law & Collection Co.* v. *Harrell,* 32 Cal.App. 45 [162 P. 125].) In the instant case, by releasing various lots subsequent to April 10, Wershow was affirming the contract rather than treating Salot's statements as a renunciation or breach by anticipatory repudiation. The first indication that Salot's statements were regarded as a repudiation and were being regarded as a breach by Wershow was after the commencement of this action when the defense was set forth in the answer.

Notwithstanding the foregoing, we are of the opinion that plaintiffs' contention that they were entitled to the releases requested on April 27, 1955, is without merit. The circumstances surrounding the releases of other lots subject to the Cameron and Wershow trust deeds and the other dealings between the parties were presented to the trial court, which found it to be a fact that the evidence was insufficient to establish a custom, practice or agreement between the parties contrary to or different from the terms and provisions of the Wershow note and trust deed. Inasmuch as the existence of an estoppel is a question of fact, the finding of the trial court that the conditions for the creation of an estoppel were not proved, will not be disturbed. (See *Judelson* v. *American Metal Bearing Co.,* 89 Cal.App.2d 256 [200 P.2d 836] ; *Greiner* v. *Kirkpatrick,* 109 Cal.App.2d 798 [241 P.2d 564].)

We think it is immaterial to the outcome of the present controversy that the plaintiffs' demand for release of certain lots on April 27, 1955, was before the due date of the note and deed of trust. Under the terms of the Wershow trust deed *"release of any one or more lots from the Cameron Deed of Trust,* in accordance with its terms, *shall entitle* the trustor hereunder to a release of the same lot or lots from this deed of trust.'' (Emphasis added.) The obligation of defendant Wershow to release the lots is dependent upon proof of performance by Cameron in releasing the lots. The trial court held that ''the release of any lots included in the Cameron Trust Deed was a condition precedent of the same lots included in the Wershow Trust Deed.''

The maturity date of the Wershow note and trust deed was May 1, 1955. As of that date, none of the lots in question had been released from the Cameron trust deed, and the trial

court correctly ruled that "On May 1, 1955, when the Wershow Note became due, owing and payable, the obligation of defendant Wershow to reconvey any of the lots of real property included under his Trust Deed and the obligation of plaintiffs to pay the Wershow Note became and now are concurrent."

In our opinion upon a showing at any time prior to May 1, 1955, that the lots had been released from the Cameron trust deed according to its terms, the obligation to release lots under the Wershow deed would have become unconditional. The language of the Wershow trust deed does not indicate that the parties intended that the maturity date was to be affected in any way whatsoever by pending requests for release of lots in situations where the obligation to release lots had not become unconditional. The effect of plaintiffs' contention that they were entitled to the releases they demanded, however, would be to require this forced construction to be placed upon the language used. We think the proper construction to be placed upon the language used is to determine that the parties intended that at all times on and after the maturity date of the Wershow note and trust deed on May 1, 1955, plaintiffs would be obliged to tender performance on their part of all concurrent conditions, including the tender of payment of $63,750 principal plus interest then due and owing upon the maturity date of the Wershow note and trust deed. (See Civ. Code, § 1439; *Meetz* v. *Mohr,* 141 Cal. 667 [75 P. 298].)

We do not regard the trial court's judgment as a deficiency judgment. Accordingly we do not think there is any merit in plaintiffs' contention that the court erred in allowing a deficiency judgment on a purchase money trust deed.

The judgment is affirmed.

White, P. J., and Drapeau, J.,* concurred.

A petition for a rehearing was denied March 3, 1958, and appellants' petition for a hearing by the Supreme Court was denied April 2, 1958.

---

*Assigned by Chairman of Judicial Council.