488 P.2d 474

Wade H. LANE and Barbara Lee Lane,
his wife, Appellants,

v.

Albert P. BISCEGLIA and Eva Bisceglia,
his wife, Appellees.

No. 1 CA–CIV 1546.

Court of Appeals of Arizona,
Division 1,
Department A.

Sept. 13, 1971.

Mariscal & Weeks, by Rudolph Mariscal, Phoenix, for appellants.

Joseph C. Meier, Phoenix, for appellees.

CASE, Judge.

This is an appeal by appellants (hereinafter referred to as purchasers) from a judgment for appellees (hereinafter referred to as vendors). The action was tried to the court which made findings of fact and conclusions of law.

Briefly, the facts are that during the first week in March, 1969, vendors and purchasers discussed the sale of certain property located on North Central Avenue, Phoenix, Arizona. At that time the vendors mentioned that the property was encumbered by a 6% mortgage, payments on which amounted to $226.00 per month. There was no discussion at that time regarding whether the mortgagee could increase this rate, since both parties were ignorant of such a possibility. On April 15, 1969, the parties signed escrow instructions which delineated the terms of their agreement to buy and sell the property. As part of the consideration, the purchasers were to assume the mortgage which was described in the following terms:

> "MORTGAGE of record, due SOUTHWEST SAVINGS AND LOAN ASSOCIATION 110 02667 with a principal sum remaining unpaid of approximately $31,000.00 with interest as therein specified * * *."

Approximately one week after the signing of the instructions, the purchasers, during a conversation with a representative of Southwest Savings and Loan, discovered that the mortgagee would not be agreeable to the assumption of the mortgage at the rate of 6%, but would only approve the assumption at the rate of 6¾%. The representative of Southwest Savings and Loan also stated that if the transfer of property was made without their approval, the in-

debtedness could become immediately due and payable at their option.[1] Under these conditions the purchasers told Southwest they would not complete the transaction. Thereafter, on or about May 6, 1969, vendors executed the final papers and on being told that the purchasers would not sign any instruments, followed the procedure outlined in the escrow instructions for the forfeiture of the $5,000.00 earnest money on deposit. This lawsuit was brought to prevent the title company from paying the vendor the earnest money, to rescind the contract and restore the parties to the *status quo ante*, i. e., return the $5,-000.00 to the purchasers.

After a trial to the court, the following findings of fact and conclusions of law were reached:

### "FINDINGS OF FACT

1. That a binding written contract was entered into between the plaintiffs, and the defendants for the purchase of a piece of property located in Phoenix, Arizona.

2. The contract provided that the plaintiffs would assume the existing mortgage loan at 6% interest but the mortgage company, Southwest Savings & Loan Association would not consent to the assumption unless the interest rate was increased to 6¾%.

3. The plaintiffs refused to complete the purchase and stated that the ¾% interest increase was the reason. The defendants had forfeiture notice sent out and claimed the $5,000.00 earnest money which was deposited in escrow.

4. The ¾% interest increase resulted in an additional $3.00 a month to be paid to the mortgage company which meant a payment of $229.00 rather than $226.00. The increase would have meant that the plaintiff would have paid an amount of approximately $690.00 over the remaining 19 years of the mortgage.

5. The plaintiffs intended to add additional rental units on the property as soon as they were able to acquire the necessary refinancing to pay for the additions.

6. The mortgage interest increase was not the reason that the plaintiffs refused to complete the purchase of the property.

7. That the defendants at all times acted in good faith and substantially complied with the terms and conditions of the purchase agreement.

### CONCLUSIONS OF LAW

1. That the escrow instructions constituted a valid purchase agreement between the parties.

2. That the defendants substantially complied with the terms of the purchase agreement and the plaintiffs failed to act in good faith when they refused to complete the purchase as agreed to.

3. That the defendants gave the proper cancellation notice as required by the purchase agreement and therefore are entitled to the $5,000.00 earnest money.

4. That the plaintiffs are not entitled to the preliminary injunction and restraining order as heretofore granted."

In reviewing this decision we must view the evidence in a light most favorable to sustaining the judgment and must accept the trial court's findings of fact unless they are clearly erroneous. Rule 52(a) Ariz.R.Civ.P., 16 A.R.S.; Bass Investment Co. v. Banner Realty, Inc., 103 Ariz. 75,

---

1. Clause 13 of the mortgage reads:

"That the indebtedness secured hereby shall become immediately due and payable at the option of Lender if Borrower shall, without Lender's approval, convey the above described premises, or any part thereof, or agree to sell, and convey the same, to, or if the title thereto shall become vested in, any other person or persons in any manner whatsoever. Lender shall not be held to have notice of any such event until it shall have received actual notice thereof and the recording of any instruments shall not be deemed to give notice of any such event to Lender for the purposes of this paragraph."

436 P.2d 894 (1968). To the contrary, we are free to draw our own conclusions of law from the facts determined. Cantlay & Tanzola, Inc. v. Senner, 92 Ariz. 63, 373 P.2d 370 (1962); Tuab Mineral Corp. v. Anderson, 3 Ariz.App. 512, 415 P.2d 910 (1966).

The purchasers question the correctness of findings of fact numbers 5, 6 and 7 while agreeing with numbers 1 through 4. The vendors question none of the findings. Though the burden is great, we are compelled to disregard a portion of finding of fact number 7.

The portion of that finding which states that the vendors substantially complied with the terms and conditions of the purchase agreement is improper for two reasons. First, the finding conflicts with the court's previous findings which indicate that the mortgage agreed upon was a 6% mortgage. Second, the finding is actually not one of fact, but a legal conclusion, which goes to the very core of the instant dispute.

■ The Arizona Supreme Court in Baker v. Leight, 91 Ariz. 112, 370 P.2d 268 (1962), discussed various problems present when a lending company has the apparent power to accelerate the obligation assumed following an unapproved transfer of the property. The Court therein implied that if the land purchase contract contained language referring generally to the mortgage, the buyer was charged with knowledge of the clause in the mortgage and subject to it. But, when the contract provided for the assumption of an identified mortgage of a specified amount, at a given specific rate of interest, with stated monthly payments, the buyer would not be charged with knowledge of the various clauses in the mortgage and would be entitled to rely on the representations made in the contract regarding the mortgage. In the instant case, the finding by the court indicates the contract specified the interest rate on the loan was 6% and the balance due was approximately $31,000.00. We find it unimportant to decide whether the purchasers under these facts would be charged with knowledge of the various clauses in the mortgage, since we find that the mortgage company only had the apparent right, Baltimore Life Insurance Co. v. Harn, 15 Ariz.App. 78, 486 P.2d 190 (1971), to approve or reject the assumption and had no right to conditionally approve the assumption at a greater rate of interest.

This conclusion is reached by examining the wording of the mortgage. Clause 5 thereof specifically entitled the lender to alter the interest rate of the note when further advances are made to the borrower. Such language is not present in clause 13. Thus, clause 13 merely permits the lender to approve or disapprove the transfer and contains no authority entitling the mortgagee to vary the interest rate.

■ The vendors did not fulfill their part of the contract by providing the purchaser with a mortgage to assume at 6%. When the vendors materially breached the contract by requiring the purchaser to assume a note and mortgage at a higher interest rate, Kammert Bros. Enter., Inc. v. Tanque Verde Plaza Co., 102 Ariz. 301, 428 P.2d 678 (1967), the purchasers had a right to rescind and recover their earnest money. See, Mahurin v. Schmeck, 95 Ariz. 333, 390 P.2d 576 (1964); Allen v. Pockwitz, 103 Cal. 85, 36 P. 1039 (1894); Nelson v. Jardine, 46 Idaho 82, 267 P. 447 (1928).

Vendors attempt to support the trial court's decision by relying on Cracchiolo v. Carlucci, 62 Ariz. 284, 157 P.2d 352 (1945), wherein the doctrine of part performance was enunciated. In that case, the court specifically conditioned the application of this doctrine to situations where "a contract has been partly performed by one party and the other has derived a substantial benefit therefrom * * *." Id. at 292, 157 P.2d at 355. Obviously, such doctrine does not apply to a wholly executory land contract where restoration of the parties to the *status quo ante* is easily accomplished by rescission.

■ It should be noted that the court's finding of fact number 6, regarding the purchasers' motive for rescinding is irrelevant since the actual motive of a purchaser is immaterial where there has been a material breach. Crim v. Umbsen, 155 Cal. 697, 103 P. 178 (1909).

The vendors' argument that the difference between 6¾% and 6% is insignificant, i. e., $3.00 per month and $690.00 over the life of the loan, leads us to inquire why they did not offer to assume the difference in the interest rates through negotiations with Southwest Savings and Loan or with the purchasers and elect to make a counter offer to the purchasers instead of seeking default under the escrow instructions. Such action probably would have been performance by the vendors and required the purchasers to go through with the deal or default.

The issuance of the mandate in this cause shall constitute directions to the trial court to enter judgment in favor of appellants.

STEVENS, P. J., and JACOBSON, J., concur.