607 P.2d 372

**AMERICAN CONTINENTAL LIFE IN-
SURANCE COMPANY, an Arizona Cor-
poration, Appellant and Cross-Appellee,**

v.

**RANIER CONSTRUCTION CO., INC.,
Appellee and Cross-Appellant.**

**No. 13950.**

Supreme Court of Arizona,
In Banc.

Feb. 6, 1980.

Rehearing Denied March 11, 1980.

Fennemore, Craig, von Ammon & Udall by Silas H. Shultz, Dwayne L. Burton, Michael Green, Phoenix, for appellant and cross-appellee.

Thomas W. Murphy, Pago Pago, American Samoa, for appellee and cross-appellant.

GORDON, Justice:

This appeal involves a suit for breach of a construction contract between American Continental Life Insurance Co. (American) and Ranier Construction Co., Inc. (Ranier). After trial by jury, a verdict was returned for Ranier in the amount of $130,000 and

for American in the amount of $10,000 on its counterclaim. The trial judge determined that neither party was entitled to recover attorney's fees from the other. Both parties appeal. Having jurisdiction pursuant to 17A A.R.S., Rules of Civil Appellate Procedure, Rule 19(e), we reverse the judgment in favor of Ranier and the court's disposition of attorney's fees.

American contracted with Ranier to construct a building for $517,286.30. To date, American has paid Ranier $457,247.47. The contract required American to make monthly progress payments for 90% of the work completed each month upon the issuance by the architect of a certificate for payment. American refused to make the final payment, consisting of the 10% retained each month and the amount due for work completed after the date of the last progress payment. It claimed that Ranier had breached the procedural requirements of the contract and had failed to construct the building in a workmanlike manner and in accordance with the plans and specifications. Ranier subsequently instituted suit for breach of the contract, to recover funds retained under the contract and damages for delays and lost profits. American counterclaimed for breach of contract and negligence, to recover damages for faulty construction and delays. The jury returned a single verdict for Ranier in the amount of $130,000 and a single verdict for American in the amount of $10,000. American appeals the verdict in favor of Ranier. Ranier cross appeals the trial court's refusal to award attorney's fees to Ranier as the prevailing party.[1]

At the close of Ranier's case and again at the close of all the evidence, American moved for a directed verdict, which was denied. One of the grounds urged by American was that Ranier had failed to meet a condition precedent to the right to final payment, because it had failed to procure from the architect a final certificate for payment as provided in the contract.

1. We note that Ranier is not appealing the jury's $10,000 verdict in favor of American, and we, therefore, do not consider that facet of the judgment.

American renews this argument on appeal, contending that the court erred in denying its motion for a directed verdict.

Article 7 of the contract provides:

"Final payment constituting the entire unpaid balance of the Contract Sum shall be paid by the Owner to the Contractor within thirty (30) days after Substantial Completion of the Work * * * provided the work has then been completed * * * and a final Certificate for Payment has been issued by the Architect."

Issuance of the final certificate for payment is governed by paragraph 9.7.2 of the General Conditions of the contract:

"Upon receipt of written notice that the Work is ready for final inspection and acceptance and upon receipt of a final Application for Payment, the Architect will promptly make such inspection and, when he finds the Work acceptable under the Contract Documents and the Contract fully performed, he will promptly issue a final Certificate for Payment stating that to the best of his knowledge, information and belief, and on the basis of his observations and inspections, the Work has been completed in accordance with the terms and conditions of the Contract Documents and that the entire balance found to be due the Contractor, and noted in said final Certificate, is due and payable."

The architect issued a certificate of substantial completion,[2] but Ranier admits that a final certificate for payment, as provided for in the contract, was never applied for or obtained. American asserts, and it is undisputed by Ranier, that it was Ranier's responsibility to procure issuance of the certificate. Ranier argues, however, that strict compliance with the requirement of a final certificate for payment was waived, because, from the beginning, both parties deviated from the formal requirements of the contract in other respects. Ranier cites as examples the fact that change orders, although done at the owner's request, were not signed by the owner; that on occasion the owner even ordered changes to be made without execution of a formal change order; that extensions of time were granted both formally and informally; and that the owner, although in agreement, also failed to sign extensions of time. The trial court believed that there was sufficient evidence to support a submission to the jury as to whether strict compliance had been waived. We disagree.

Waiver is either the express, voluntary, intentional relinquishment of a known right or such conduct as warrants an inference of such an intentional relinquishment. *See, e. g., City of Tucson v. Koerber,* 82 Ariz. 347, 313 P.2d 411 (1957). Waiver by conduct must be established by evidence of acts inconsistent with an intent to assert the right. *Occidental Life Insurance Co. v. Jacobson,* 15 Ariz. 242, 137 P. 869 (1914); *see Bolo Corp. v. Homes and Son Construction Co., Inc.,* 105 Ariz. 343, 464 P.2d 788 (1970). The waiver of one right under a contract does not necessarily waive other rights under the contract. *See O'Malley v. Cummings,* 86 Ill.App.2d 446, 229 N.E.2d 878 (1967). Thus, even if American did waive other rights under the contract relating to change orders or extensions of time, that conduct does not manifest an intent to waive any right relating to payment for

---

**2.** Issuance of the certificate of substantial completion is provided for in Paragraph 9.7.1 of the General Conditions of the contract:

"9.7.1. When the Contractor determines that the Work or a designated portion thereof acceptable to the Owner is substantially complete, the Contractor shall prepare for submission to the Architect a list of items to be completed or corrected. The failure to include any items on such list does not alter the responsibility of the Contractor to complete all Work in accordance with the Contract Documents. When the Architect on the basis of an inspection determines that the Work is substantially complete, he will then prepare a Certificate of Substantial Completion which shall establish the Date of Substantial Completion, shall state the responsibilities of the Owner and the Contractor for maintenance, heat, utilities, and insurance, and shall fix the time within which the Contractor shall complete the items listed therein. The Certificate of Substantial Completion shall be submitted to the Owner and the Contractor for their written acceptance of the responsibilities assigned to them in such Certificate."

work. *See Practical Construction Co. v. Granite City Housing Authority*, 416 F.2d 540 (7th Cir. 1969). Ranier does not indicate any evidence, nor does any evidence appear in the record, that the parties ever disregarded any of the terms of the contract relating to payments. Accordingly, we find no waiver.[3]

▆▆▆ Ranier also argues, alternatively, that certain acts by American[4] prevented fulfillment of the condition precedent, thereby excusing performance. We fail to perceive how these acts prevented Ranier from seeking a final certificate of payment from the architect. Similarly, we reject Ranier's assertion that seeking a final certificate of payment would have been a futile act, because American had already demonstrated its unwillingness to co-operate by refusing to sign the certificate of substantial completion. The failure of American to sign the certificate of substantial completion has nothing to do with Ranier's obligation under the contract to procure the final certificate of payment in order to be in a posture to claim that payment from American is due. Moreover, even if Ranier is correct in assuming that American would not have made the final payment had Rani-

er sought and received the final certificate of payment from the architect, Ranier is not excused from the contractually-imposed duty of acquiring the certificate. Without it, we have no way of knowing if the architect was satisfied that the list of items to be completed between the time of issuance of the certificate of substantial compliance and the application for final payment[5] had been completed and that the contract was, thus, fully performed. At the trial, in fact, the architect testified that after he issued the certificate of substantial completion, the building was *not* complete, and items on the "punch" list remained unfinished.[6]

▆▆▆ We agree with American that the final certificate for payment is not "procedural chaff." It is a major substantive right, which "serves a vital interest, in that it induces the contractor to render a performance that conforms in fact to plans and specifications, spurs him to stay with the job and, upon completion, furnishes the main incentive to make conforming corrections." *Loyal Erectors, Inc. v. Hamilton & Son, Inc.*, 312 A.2d 748, 755 (Me.1973). The trial court erred in failing to direct a verdict in American's favor because of Ranier's

**3.** Because we find no waiver, we need not address American's contentions that waiver must be specially pleaded and that Ranier failed to plead it.

**4.** The president of American at one point, in a fit of anger, broke a panel of drywall with an ax to protest what he considered shoddy workmanship. He also hired a special supervisor who Ranier claims improperly began giving orders directly to the workmen.

**5.** The list of items to be completed is provided for in Paragraph 9.7.1 of the General Conditions of the contract. See footnote 2 *infra.*

**6.** The dissenting opinion discusses another argument to support Ranier's contention that failure to fulfill the condition precedent should not preclude it from bringing suit for the contract price. This is the theory that the contract had been repudiated, thereby obviating the necessity to comply with the condition precedent. We are convinced that the facts of the case do not support repudiation. American's refusal to make the final payment may not be equated with a denial on its part of its obligation to pay under any circumstances, no matter what Ranier did, thereby bringing the contract to an end.

While refusing to pay, American continued to demand that Ranier complete the punch list, a clear indication that American considered the contract extant. As stated in its answer, American refused to make final payment because it believed that Ranier had not completed construction according to the contract plans and specifications. Thus, American thought that its duty to make final payment had not yet arisen according to the terms of the contract, not that its contractual obligation was forever terminated.

Additionally, the dissent relies on the doctrine of substantial performance, apparently satisfied that Ranier's deviations were so trivial as to give rise to the doctrine, despite contradictory evidence. By express provision of the contract, the parties set up a system of progress payments whereby the agreed upon value of full compliance by Ranier with the plans and specifications called for within the contract, and as vouched for by the architect, was the final payment by American. To allow the doctrine of substantial performance to operate here would fly in the face of the original intent of the parties and would nullify the contract.

non-compliance with the condition precedent of obtaining a final certificate of payment.

American challenges the jury's award to Ranier on several other grounds, which we need not consider, because we reverse on the basis of the court's denial of American's motion for a directed verdict. We next address the issue of attorney's fees raised by Ranier.

■ The contract between American and Ranier provides for attorney's fees in the following language:

"In the event of litigation between the parties hereto arising out of this Contract or the performance of the Work hereunder, the prevailing party shall be entitled to recover reasonable attorney's fees in addition to any other damages allowed by law." Supplementary General Conditions, Paragraph 15.3.

The trial judge would not allow either party to recover attorney's fees from the other, because he believed that both parties had breached their agreements, and he considered this finding implicit in the jury's verdicts. Because of our decision today reversing the judgment in favor of Ranier, American is clearly the prevailing party and is entitled to recover attorney's fees by the above express provision of the contract.

The judgment in favor of Ranier is reversed and remanded to the trial court with directions to enter judgment in American's favor upon Ranier's complaint and to award attorney's fees to American.

HOLOHAN, V. C. J., and HAYS and CAMERON, JJ., concurring.

STRUCKMEYER, Chief Justice, dissenting.

I cannot agree with the disposition of this case by the majority of this Court. In order that the case be placed in perspective, certain facts should be emphasized.

Eight years ago, Ranier Construction Company entered into a contract by which it agreed to construct an office building for American Continental for $517,286.30. Approximately three years later, Ranier

brought this suit for damages for partial nonpayment of the cost of constructing the building. American Continental asserted that Ranier had not constructed the building in conformity with standards of good workmanship and that no final certificate for payment had been issued by the architect as required by the contract. American Continental counterclaimed against Ranier for an amount necessary to put the building in compliance with the construction agreement. After a trial and a view of the building by the jury, a verdict of $130,000 was returned in favor of Ranier, and $10,000 in favor of American Continental on its counterclaim.

American Continental employed the architectural firm of Haver, Nunn & Nelson, Inc., by separate written agreement, to prepare the plans for the building and to supervise its construction. By the specific language of paragraph 2.2.2 of the construction contract, the architect was made the owner's agent.

American Continental early became dissatisfied with the progress of the work, and the delay in completion of the contract became one of its grounds for refusal to pay Ranier the balance due on the contract. By paragraph 8.3.1 of the construction contract, as amended, it is provided:

"If Contractor is delayed at any time in the progress of the Work by an act * * of the Owner or Architect or by any employee of either, or by any separate contractor employed by Owner, or by changes ordered in the Work * * * then the Contract time shall be extended by a Change Order for a reasonable period of time as determined by the Architect to cover such occurrences."

The evidence at the trial established that the architect had extended by change order every delay of which American Continental complained. (By amended subparagraph 2.2.10, either party was authorized to bring an action "concerning the matter decided by the architect.")

The construction contract also provided by paragraph 3.2.4, "The owner shall issue

all instructions to the Contractor through the Architect." American Continental early breached this clause of the contract by placing a personal representative on the job site who gave orders directly to sub-contractors as well as the contractor's personnel working on the job.

By the construction agreement, when the work on the building was substantially completed, Ranier was authorized to request the architect to issue a Certificate of Substantial Completion. A Certificate of Substantial Completion is issued by the architect when the building is in such a condition that the owner can occupy it. At that time, the responsibility for insurance and maintenance of the property becomes the owner's. Accompanying the Certificate of Substantial Completion is what is called the "final punch list." This is a list of matters to be corrected or completed before the architect will issue a Certificate of Final Payment. Copies of the Certificate of Substantial Completion and "final punch list" were issued by the architect and delivered to Walter Bush, President of American Continental, for his signature on October 10, 1973. However, Bush refused to accept the architect's "final punch list", submitting a list of things with which he required Ranier to comply before the building would be acceptable to him. Lawrence Blesh, President of Ranier Construction, Inc., later testified at the trial without contradiction:

"Q Did Ranier comply with the punch list that the architect prepared?

A Yes, we did.

Q Did Mr. Bush himself prepare his own punch list?

A Yes, he did.

Q Did you attempt to comply with that?

A We attempted to."

Eventually an impasse developed with the architect supporting Ranier against Bush's demands for further corrections as being unreasonable.

Blesh testified:

"Q Was payment demanded by you from Mr. Bush?

A Yes.

Q Mr. Bush refused to make payment?.

A Yes, he did."

Blesh, in bringing suit, obviously treated Bush's conduct, including his refusal to make payment, as an anticipatory breach.

"We have recognized that an action may be maintained for breach of contract based upon the anticipatory repudiation by one of the parties to the contract. *Sarle v. School Dist. No. Twenty-Seven of Pima County,* 32 Ariz. 96, 255 P. 994. It is well established that in order to constitute an anticipatory breach of contract there must be a positive and unequivocal manifestation on the part of the party allegedly repudiating that he will not render the promised performance when the time fixed for it in the contract arrives. *Mobley v. New York Life Ins. Co.,* 295 U.S. 632, 55 S.Ct. 876, 79 L.Ed. 1621, 99 A.L.R. 1166; *Salot v. Wershow,* 157 Cal.App.2d 352, 320 P.2d 926; *Atkinson v. District Bond Co.,* 5 Cal.App.2d 738, 43 P.2d 867; *Preston v. Love,* 240 S.W.2d 486 (Tex.Civ.App.1951); 4 Corbin on Contracts § 973 (1951); 5 Williston on Contracts § 1324 (rev. ed. 1937); Restatement of the Law of Contracts § 318." *Diamos v. Hirsch,* 91 Ariz. 304, 372 P.2d 76 (1962).

One further fact should be stressed. *In December 1973, prior to the bringing of this action, American Continental took possession of the building and has been occupying and using it for the purpose for which it was built ever since.*

It is clear from the most cursory perusal of the facts in this case that when ultimately an impasse developed, Bush treated the construction contract as at an end. It is of no significance or materiality to this lawsuit as to who was at fault in causing the final repudiation [1] because even if we as-

---

1. The court instructed the jury:

"First, in regard to Ranier's complaint if you find that American Continental did not breach the contract, your verdict must be for American Continental. If, however, you find

that American Continental breached the contract, your verdict must be for Ranier, * *."

Manifestly, the jury must have found that American Continental breached the contract.

sume that it was Ranier, the law does not foreclose the right to recover for the proper work done under the contract and for materials which were furnished to the building. American Continental acquired a building which the architect said was substantially completed in conformity with the plans and specifications.

"The common-law rule required literal performance of building contracts, but the American courts generally hold that substantial performance of such contracts will support a recovery either on the contract or on a quantum meruit basis. Three reasons are given for that holding. One is that materials and labor upon a building are such that even if rejected by the owner of the land he receives benefit thereof. Since the owner receives the benefits of the builder's labor and materials, it is equitable to require the owner to pay for what he gets. The second reason is that it is next to impossible for a builder to comply literally with all the minute specifications in a building contract. And the third is that the parties are presumed to have impliedly agreed to do what is reasonable under all the circumstances with reference to the subject of performance. 6 R.C.L., page 667, Sec. 343; 9 Am.Jur., page 30, Sec. 40; 17 C.J.S. Contracts § 508, page 1085; *Hickory Investment Co. v. Wright Lumber Co.*, 152 Miss. 825, 119 So. 308." *Standard Millwork & Supply Co. v. Mississippi Steel & Iron Co.*, 205 Miss. 96, 38 So.2d 448 (1949).

The California Court of Appeals, in *Martin v. Karsh*, 142 Cal.App.2d 468, 298 P.2d 635, 636–637 (1956), put it this way:

"The law is settled in this state, that in the case of building contracts, especially where the owner has taken possession of the building and is enjoying the fruits of the contractor's work, no literal compliance with the contract in all details and no absence of all defects and imperfections is required to entitle the contractor to recovery on the contract, but that he can have such recovery after substantial performance in good faith, if the deviations and imperfections do not substantially affect the usefulness of the building for the purposes for which it was intended, subject to an allowance for damages if the owner has suffered any by reason of the failure to perform strictly."

The Rhode Island court, in *Ferris v. Mann*, 99 R.I. 630, 210 A.2d 121 (1965), said:

"The common-law rule that there must be complete or absolute performance with the terms of a building contract for plaintiff to recover the agreed consideration has long since been relaxed in this country. It has been repeatedly held in a number of jurisdictions that where the builder has not wilfully deviated from the specifications of a contract and all that remained to be done in order to constitute performance within the meaning of the contract is of a trivial or minor nature, the builder is entitled to recover the contract price with adjustments made by the court to compensate defendant for the unfinished or unsatisfactory work. See *Connell v. Higgins*, 170 Cal. 541, 150 P. 769, *Sgarlat v. Griffith*, 349 Pa. 42, 36 A.2d 330, and *Pelletier v. Masse*, 49 R.I. 408, 143 A. 609." 210 A.2d at 124.

The Missouri Court of Appeals, in *Talbot-Quevereaux Const. Co. v. Tandy*, 260 S.W.2d 314, 316 (1953), said:

"In the case of substantial but defective performance, where the contractor sues for the contract price and the owner defends by way of recoupment, the owner, upon proof of defective performance, is entitled to have the contractor's recovery reduced by the amount that would reasonably be required to remedy the defects and make the structure conform to the plans and specifications. *Spink v. Mueller*, 77 Mo.App. 85; *Walter v. Huggins*, 164 Mo.App. 69, 148 S.W. 148."

And see *Jim Arnott, Inc. v. L & E, Inc.*, 539 P.2d 1333, 1336 (Colo.App.1975), wherein the court said:

"If it appears that a contractor has substantially performed his contract, then he is entitled to the contract price, less an offset for the cost to remedy the deficiencies. The purpose of the doctrine of substantial performance is to avoid injustice where a building contractor has performed all major aspects of the construction and the owner seeks to avoid payment for inconsequential defects in the work."

The foregoing statements beyond question reflect the status of the law in Arizona. In *Cracchiolo v. Carlucci*, 62 Ariz. 284, 157 P.2d 352 (1945), a building contract was entered into for the construction of a tourist court or motel near Tucson. The owner took possession of the motel and opened it for business. He refused to pay some $14,000 on the contract and for extras, claiming non-performance of the contract in accordance with the plans and specifications. It was established that the contractor failed to regrade and repave the motel driveway. This Court said:

"Where a contract has been partly performed by one party and the other has derived a substantial benefit therefrom, the latter cannot refuse to comply with its terms simply because the former fails to complete performance. Where there has been part performance and there is a breach of a promise which goes only to a part of the consideration and the breach may be compensated for in damages, the breach does not relieve the other party from his obligation to perform his promise. * * * We believe [these princi-

ples] to be applicable to the facts here." 62 Ariz. at 292, 157 P.2d at 355.

When Ranier finally left the job, the construction contract was ended, irrespective of who was responsible for causing its ultimate repudiation. The enforcement by this Court of a condition in the contract which had obviously been renounced, forecloses any recovery by the contractor for his labor and materials put into the building, even though the architect had issued a Certificate of Substantial Completion, and American Continental had occupied the building, thereby unjustly enriching the owner.[2]

The jury, after a twelve-day trial devoted to evidence concerning Ranier's work and after a view of the building, brought in a verdict for Ranier for $130,000 and offset that verdict with a verdict for American Continental on its counterclaim for $10,000. The ultimate absurdity resulting from the Court's opinion is that the owner of the building gets $10,000 for either deficiencies or delays in construction from the contractor, but the contractor is never paid for his work and materials. The order of this Court reversing the judgment of the trial court with directions to enter judgment in American Continental's favor upon Ranier's complaint and, in addition, awarding attorney's fees to American Continental is a gross miscarriage of justice.

I dissent.

2. The court instructed the jury:

"As one of its defenses to Ranier's claims that American Continental has breached the contract by failing to pay the entire amount agreed upon for construction, American Continental has alleged that Ranier has failed or omitted to establish that it has performed certain *conditions precedent*. * * * a condition precedent is a fact which must exist or occur before a duty to perform a contractual obligation arises.

In this case, if the contract includes conditions precedent those conditions must have been satisfied before Ranier is entitled to release of the retention and final payment, unless you find that American Continental has by its conduct waived its right to rely on performance

of those conditions precedent. To constitute waiver there must be voluntary and intentional relinquishment of a known right. It may be expressly stated or inferred by conduct."

The jury could have concluded that when American Continental advised Ranier that it would not pay the balance of the contract, such conduct terminated the contract, thus waiving the condition that payment was dependent on the architect's issuance of a Certificate of Final Payment. But irrespective, if American Continental's conduct is not within the outer limits of waiver, it clearly falls within the doctrine of estoppel *in pais*, a doctrine courts invoke to promote the ends of justice and to prevent injury and inequitable consequences.